**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

_____
                                :
MARK PICOZZI,                   :
                                :    Civil Action No.
                Plaintiff,      :    11-3991 (JBS)
                                :
           v.                   :    **O P I N I O N**
                                :
WPVI-TV CHANNEL 6               :
ACTION NEWS, et al.,            :
                                :
                Defendants.     :
_____:


**Simandle**, District Judge:

        Plaintiff, an inmate confined at the Metro West Detention

Center, Miami, Florida, seeks to bring this action in forma

pauperis.[1]  Based on his affidavit of indigence and the absence

of three qualifying dismissals within 28 U.S.C. § 1915(g), the

Court will grant Plaintiff's application to proceed in forma

pauperis, pursuant to 28 U.S.C. § 1915(a), and will order the

Clerk to file the Complaint.

        At this time, the Court must review the Complaint to

determine whether it should be dismissed as frivolous or

malicious, for failure to state a claim upon which relief may be

_____

        [1]  Plaintiff's initial submission contained a deficient in
forma pauperis application.  See Docket Entry No. 1.  This Court,
therefore, direct Plaintiff to cure the deficiency.  See Docket
Entry No. 2.  In response, Plaintiff submitted a complete in
forma pauperis application.  See Docket Entry No. 3.

granted, or because it seeks monetary relief from a defendant who is immune from such relief.

I.   **BACKGROUND**

    A.   **INITIAL STAGES OF THESE PROCEEDINGS**

As noted supra, see this Opinion, note 1, this Court denied Plaintiff in forma pauperis status without prejudice.   See Docket Entry No. 2.   In its order denying Plaintiff in forma pauperis status, this Court also noted:

> Plaintiff's Complaint indicates that he is not in imminent danger of serious physical injury; rather, his Complaint asserts that a certain news agency committed "slander/libel" by wrongly referring to Plaintiff as "rapist."   In addition, without any factual clarification, the Complaint maintains that Defendants violated Plaintiff's "Eighth Amendment rights." Moreover, the Complaint is silent as to the time when the alleged defamation took place, although it does clarify that the alleged public dissemination took place in the Commonwealth of Pennsylvania.

Id. at 2-3 (citations to Docket Entry No. 1 omitted).

The Court also informed Plaintiff that

> [a] civil action based on diversity jurisdiction may . . . be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . , or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

Id. at 3, n. 1 (quoting 28 U.S.C. § 1391(b)) (emphasis in original, original brackets removed).

Upon providing Plaintiff with these clarifications and, hence, allowing Plaintiff an opportunity to reflect on his claims, the Court directed as follows:

> [In the event Plaintiff elects to prepay his filing fee or to submit a complete in forma pauperis application,] Plaintiff shall file, together with his filing fee or with his proper in forma pauperis application, a written statement operating as Plaintiff's supplement to his Complaint.  Such written statement shall clarify:
>
> a.   The time when the alleged public dissemination of wrongful information took place;
>
> b.   The factual basis in support of Plaintiff's position that Defendants violated Plaintiff's Eighth Amendment rights; and
>
> c.   The basis for Plaintiff's position that his challenges shall be heard in this District . . . .

Id. at 5.  In response, Plaintiff submitted a supplement to his Complaint, as discussed infra.

**B.   ASSERTIONS STATED IN THE ORIGINAL COMPLAINT**

In his Complaint (a fifteen-page compilation[2]), see Docket Entry No. 1, Plaintiff named, as Defendants in this action, the following entity and individuals: (a) WPVI-TV Channel 6 Action News ("News Channel"); (b) Richard Del Campo, Chief ("Chief"); and () John Does Cherry Hill Police Department ("Does").  See Docket Entry No. 1, at 3.

---

[2]   The bulk of Plaintiff's voluminous original Complaint was consumed by Plaintiff's self-serving factless conclusions as to Defendants' alleged state of mind and Plaintiff's lengthy teaching to this Court how to adjudicate his "slander / libel" claim.

With regard to the News Channel, Plaintiff's Complaint asserted that the News Channel "committed slander / libel and defamation of character against [Plaintiff] by broadcasting and reporting both live and on the news and on the[ir] website that [Plaintiff] served time for 'rape' and was a 'convicted rapist.'" Docket Entry No. 1, at 3.  The Complaint did not plead how the Chief (or any of the "Does"), personally, was implicated in this matter.  Rather, Plaintiff: (a) asserted that these persons must be deemed liable because the News Channel made its "statements . . . from misinformation provided to the [News Channel] by the Cherry Hill Police Department," id. at 4; and (b) deduced from the foregoing that the Chief, being the supervisor of the Cherry Hill Police Department, and Does, being employees of the same Cherry Hill Police Department, must be liable to Plaintiff.  See id.  Stating the injury Plaintiff had suffered as a result of the alleged violations, Plaintiff asserted that, "[w]hen the news story broke, that same night Plaintiff was attacked with a baseball bat and gun [by unspecified person] at his ex-girlfriend[']s home[,] causing him to flee New Jersey.  His life was threatened to the point he fe[ar]ed for his own safety.  He was chased and called rapist." Id. at 9.

Plaintiff's Complaint was dated July 5, 2011.  See id. at 1.  Therefore, it is self-evident that Plaintiff could not have handed it to his prison officials for mailing to this Court prior

to that date.  Although it is plausible that Plaintiff handed the
Complaint on a later date, this Court presumes, without making a
factual finding, that the Complaint was handed to Plaintiff's
prison officials on July 5, 2011.

### C.   ASSERTIONS STATED IN THE SUPPLEMENT TO THE COMPLAINT

In his supplement ("Supplement") to the Complaint, Plaintiff
stated that "the alleged public dissemination [by the News
Channel] took place [on] August 5, 2009 . . . ."  Docket Entry
No. 3, at 5.

Altering Plaintiff's original allegations as to the injury
Plaintiff suffered, the Supplement asserted that, "[w]hen the
story broke, I was immediately contacted by my employer[,]
Mul[l]ica Hill Shoprite[,] and told I was not to come back to
work because of the news story."[3]  Id. at 5.

---

[3]  By the time of the news report, Plaintiff had an
extensive criminal record in New Jersey (and later developed
additional criminal record in other states).  Plaintiff's then-
existing criminal record included aggravated assault and armed
burglary (stemming from the offenses adjudicated in 1987),
kidnapping and robbery conviction (stemming from the offenses
adjudicated in 1991), and parole violation adjudicated in 1990.
See <<https://
www6.state.nj.us/DOC_Inmate/details?x=1048539&n=0>>.  Plaintiff's
Supplement did not clarify the basis for Plaintiff's position
that his alleged firing was a result of the store management's
concern with the News Channel's reference to the "rape" rather
than a concern prompted by the store's discovery of Plaintiff's
prior criminal record and new criminal offenses he was charged
with immediately prior to the News Channel's broadcast.  The
Court notes, in passing, its grave concern with the fact that all
Plaintiff's pleadings in this action asserted that he was
sentenced only once, and solely for the offense of kidnapping,
concealing the rest of his record.

Upon making this statement, the Supplement alleges that Plaintiff had "a career [at the Mullica Hill] Shoprite[,] where [he] was making excellent money," id. at 6; the Supplement alleges that it "was cruel and unusual punishment under the Eighth Amendment" for Defendants to disseminate information about Plaintiff being a "rapist" since Plaintiff regarded his loss of employment as "cruel and unusual punishment."   See id.   The Supplement also asserts that Plaintiff's "[F]ourteenth Amendment right was also violated, because this [firing] denied [him] life, liberty, property without due process."   Id.   Moreover, the Supplement also maintains that "[t]he equal protection of the law [was] violated because false and misleading information was provided to the entire public and [Plaintiff's] reputation was destroyed as was [his] career."

With that, Plaintiff's Supplement states that the proper venue for this action is in this District because the Cherry Hill Police Department is located in the State of New Jersey.   See id. at 7.   Plaintiff avers that his domicile remained in New Jersey regardless of Plaintiff's lengthy period of recent residence in Florida because he was always intending and allegedly still intends to return to New Jersey.[4]

---

[4]   It appears that, as of now, Plaintiff is serving a prison term in Florida.   This Court's determination, however, is complicated by Plaintiff's assertion that he is situated in Florida in order to sue Miami Beach Police Department (a Florida entity), as well as Egg Harbor Police Department (a New Jersey

**D.    NEWS ARTICLES ABOUT PLAINTIFF**

The Court located the following four news articles about

Plaintiff in the public domain:

(1)   Posted: Wednesday, August 5, 2009.
      Police say robber fakes being officer.
      The Egg Harbor Township and Cherry Hill police
      departments are looking for a man who they say
      impersonates a police officer, then robs women.  Cherry
      Hill Detective Sgt. Joseph Vitarelli said Tuesday that
      Mark Picozzi, 43, of Cherry Hill, has tricked women in
      the [Egg Harbor] township and at least one in Cherry
      Hill by telling them he is a policeman doing an
      investigation, then extorting money and "whatever else
      he can get" from his victims.  Vitarelli said Picozzi
      was arrested May 13 on charges of criminal restraint,
      impersonating a police officer, attempted criminal
      sexual contact and theft.  Picozzi was released from
      the Camden County jail May 14 on bail, according to the
      Camden County Warden's Office.  Vitarelli described
      Picozzi as about 5 feet 6 inches to 5 feet 7 inches
      tall, weighing 160 to 170 pounds.  Egg Harbor Township
      police said in a statement that Picozzi spends a lot of
      time gambling in Atlantic City and might also be in the
      Marlton, Burlington County, and Philadelphia areas.
      Picozzi served time between February 1987 and January
      2008 on various charges of kidnapping, burglary,
      aggravated assault, robbery and parole violation,
      according to the state Department of Corrections' Web
      site.  Anyone with information should contact the Egg
      Harbor Township Detective Division . . . .

<<http://www.pressofatlanticcity.com/news/press/cape_may/article_

694825cd-7b52-5fd8-a990-9deaa47b81a3.html>>.

(2)   Alleged fake cop has criminal past.
      Wednesday, August 05, 2009.

---

entity), Cherry Hill Police Department (another New Jersey
entity), and all these Plaintiff's legal actions are, allegedly,
a part of certain investigation by the F.B.I. and the Department
of Justice, and these federal agencies, somehow, "all fear for
[Plaintiff's] well[-]being."  Docket Entry No. 3, at 7-8.

A man who remains at large for impersonating a police
officer has a criminal past, Action News has learned.
Cherry Hill police say Mark Picozzi was *arrested* for
rape and other offenses nearly 20 years ago.  After his
arrest he was sentenced to prison and recently got out.
Since then, he was arrested for impersonating a police
officer in Cherry Hill, along with two counts of
criminal sexual conduct and two counts of criminal
restraint.  He posted bail, police say, and fled to Egg
Harbor Township.  There, police say Picozzi again posed
as a police officer and his name and picture were
released to the media this week.  Picozzi is accused of
telling his victims he has search teams waiting to comb
through their home.  During the bogus investigation he
allegedly steals money and identification from his
female victims.  So far, there have been no reports of
sexual assaults in Egg Harbor Township.  Anyone having
any information regarding the whereabouts of Mark
Picozzi should contact the Egg Harbor Township Police
Department, Detective Division . . . .
Copyright ©2011 WPVI-TV/DT. All Rights Reserved.

<<http://abclocal.go.com/wpvi/story?section=news/local&id=69500

83>> (emphasis supplied).

(3)  Man Accused Of Inappropriately Touching Victim.
     POSTED: Wednesday, September 30, 2009.
     MIAMI BEACH, Fla. -- Police used a cell phone number to
     track down a man suspected of posing as a police officer so
     he could rob and inappropriately touch a woman.  According
     to Miami Beach police, on Saturday, Mark Picozzi, 43, met a
     woman to view an apartment for rent.  Inside the apartment,
     police said, Picozzi told the woman he was a police officer
     doing a drugs and guns investigation. Police said Picozzi
     told the woman to sit down and not to scream, then went
     through her purse, stealing her ID, a ring and cash.  Police
     said Picozzi also touched the woman inappropriately.
     Investigators said they used the cell phone number from
     which Picozzi had called the woman in order to track him
     down and arrest him.  Miami Beach police said Picozzi is
     wanted in New Jersey in connection with two similar crimes.
     Picozzi faces charges of [armed] robbery, kidnapping and
     falsely impersonating an officer.
     Copyright 2009 by Post-Newsweek Stations.

<<http://www.local10.com/news/21162503/detail.html>>.

8

(4)  Man accused of impersonating cop in Egg Harbor Township
      caught in Florida.
      Posted: Tuesday, October 6, 2009.
      Mark Picozzi, a New Jersey man who was wanted by Egg
      Harbor Township and Cherry Hill police for robbing
      women while impersonating a police officer, was
      arrested last week in Miami Beach, Fla., according to
      police.  Picozzi, 43, of Cherry Hill, made an
      appointment with a young woman Sept. 26 to view a
      rental apartment at 320 W. 25th Street, Miami Beach
      Police Officer Deborah Doty said Monday.  When Picozzi
      arrived at 9 p.m., he allegedly told the Miami Beach
      woman that he was a cop, covered her mouth, removed
      $600 from her pocketbook and fondled her breasts, Doty
      said. Picozzi then allegedly took other items from the
      woman, including her identification and a ring, locked
      her inside a closet and fled, Doty said.  The victim,
      whom police declined to identify, provided a detailed
      description of Picozzi and he was arrested Sept. 28 at
      a Best Western Hotel in Coral Gables, Doty said.
      Picozzi was charged with grand theft in the third
      degree/vehicle, strong arm robbery, kidnapping and
      falsely impersonating a police officer, according to
      the Miami-Dade County inmate profile Web site.  Picozzi
      allegedly tricked and robbed women in Egg Harbor
      Township and Cherry Hill earlier this year, according
      to the township and Cherry Hill police.  Picozzi was
      arrested May 13 by the Cherry Hill police for criminal
      restraint, impersonating a police officer, attempted
      criminal sexual contact and theft charges, but he was
      released from Camden County jail on bail the next day.
      The Egg Harbor Township police sent out a statement and
      photo in August seeking public help in catching
      Picozzi.  On late Monday afternoon, Picozzi was still
      incarcerated at Metro West Detention Facility in Miami,
      where he is held with no bond [on] kidnapping charge.
      His court date is Oct. 19.  Picozzi previously spent
      jail time in New Jersey between February 1987 and
      January 2008 on various charges of kidnapping,
      burglary, aggravated assault, robbery and parole
      violation, according to the state Department of
      Corrections' Web site.

<<http://www.pressofatlanticcity.com/news/press/atlantic/art

icle_9f2f73b7-55b8-54d1-8714-0971bd6e0a39.html>>.

      The Court, thus, presumes, that Plaintiff's claims are based

9

on the second above-quoted article stating that, twenty years ago, Plaintiff was arrested on, <u>inter alia</u>, allegations of rape.

## II.   <u>STANDARD OF REVIEW</u>

In determining the sufficiency of a complaint, the Court must be mindful to construe the facts stated in the complaint liberally in favor of the plaintiff.  <u>See Erickson v. Pardus</u>, 551 U.S. 89 (2007); <u>Haines v. Kerner</u>, 404 U.S. 519 (1972); <u>United States v. Day</u>, 969 F.2d 39, 42 (3d Cir. 1992).  Indeed, it is long established that a court should "accept as true all of the [factual] allegations in the  complaint and reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  <u>Morse v. Lower Merion School Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997).  However, while a court will accept well-pled allegations as true, it will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations.  <u>See</u> <u>id.</u>

Addressing the clarifications as to the litigant's pleading requirement stated in the United States Supreme Court in <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544 (2007), the Court of Appeals for the Third Circuit provided the courts in this Circuit with detailed and careful guidance as to what kind of allegations qualify as pleadings sufficient to pass muster under the Rule 8 standard.  <u>See</u> <u>Phillips v. County of Allegheny</u>, 515 F.3d 224,

230-34 (3d Cir. 2008).  Specifically, the Court of Appeals

observed as follows:

> "While a complaint . . . does not need detailed
> factual allegations, a plaintiff's obligation [is] to
> provide the 'grounds' of his 'entitle[ment] to relief'
> [by stating] more than labels and conclusions, and a
> formulaic recitation of the elements of a cause of
> action . . . ." Twombly, 127 S. Ct. at 1964-65 . . .
> Rule 8 "requires a 'showing,' rather than a blanket
> assertion, of entitlement to relief." Id. at 1965
> n.3. . . . "[T]he threshold requirement of Rule
> 8(a)(2) [is] that the 'plain statement [must] possess
> enough heft to 'sho[w] that the pleader is entitled to
> relief.'" Id. at 1966.  [Hence] "factual allegations
> must be enough to raise a right to relief above the
> speculative level." Id. at 1965 & n.3. . . . [Indeed,
> it is not] sufficient to allege mere elements of a
> cause of action; instead "a complaint must allege
> facts suggestive of the proscribed conduct." Id.

Id. at 230-34 (original brackets removed).

This pleading standard was further refined by the United

States Supreme Court in Ashcroft v. Iqbal, 129 S. Ct. 1937

(2009), where the Court observed:

> [In any civil action, t]he pleading standard . . .
> demands more than an unadorned ["]the-defendant-
> unlawfully-harmed-me["] accusation. [Twombly, 550
> U.S.] at 555 . . . .  A pleading that offers "labels
> and conclusions" or "a formulaic recitation of the
> elements of a cause of action will not do." [Id.] at
> 555.  Nor does a complaint suffice if it tenders
> "naked assertion[s]" devoid of "further factual
> enhancement." Id. at 557. . . . A claim has facial
> plausibility [only] when the plaintiff pleads factual
> content . . . . Id. at 556. [Moreover,] the
> plausibility standard . . . asks for more than a sheer
> possibility that a defendant has acted unlawfully.
> Id. [Indeed, even w]here a complaint pleads facts that
> are "merely consistent with" a defendant's liability,
> [the so-alleging complaint still] "stops short of
> [showing] plausibility of 'entitlement to relief.'"
> Id. at 557 (brackets omitted). [A fortiori,] the tenet

11

that a court must accept as true all of the
allegations contained in a complaint is inapplicable
to legal conclusions [or to t]hreadbare recitals of
the elements of a cause of action, supported by mere
conclusory statements [,_i.e.,_ by] legal conclusion[s]
couched as a factual allegation [e.g.,] the
plaintiffs' assertion of an unlawful agreement [or]
that [defendants] adopted a policy "'because of,' not
merely 'in spite of,' its adverse effects upon an
identifiable group." . . . . [W]e do not reject these
bald allegations on the ground that they are
unrealistic or nonsensical. . . .  It is the
conclusory nature of [these] allegations, rather than
their extravagantly fanciful nature, that disentitles
them to the presumption of truth. . . . [Finally,] the
question [of sufficiency of] pleadings does not turn .
. . . the discovery process.  _Twombly_, 550 U.S.] at 559
. . . . . [The plaintiff] is not entitled to discovery
[where the complaint alleges any of the elements]
"generally," [_i.e.,_ as] a conclusory allegation
[since] Rule 8 does not [allow] pleading the bare
elements of [the] cause of action [and] affix[ing] the
label "general allegation" [in hope to develop facts
through discovery].

_Iqbal_, 129 S. Ct. at 1949-54.

## III.  <u>DISCUSSION</u>

### A.  PLAINTIFF'S CHALLENGES VIEWED AS SECTION 1983 CLAIMS

#### 1.  <u>General Principle</u>

A plaintiff may have a cause of action under 42 U.S.C. §

1983 for certain violations of his constitutional rights.

Section 1983 provides in relevant part:

Every person who, under color of any statute, ordinance,
regulation, custom, or usage, of any State or Territory . .
. subjects, or causes to be subjected, any citizen of the
United States or other person within the jurisdiction
thereof to the deprivation of any rights, privileges, or
immunities secured by the Constitution and laws, shall be
liable to the party injured in an action at law, suit in
equity, or other proper proceeding for redress . . . .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law.  See West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

### 2.   **Allegations Against the News Channel**

To recover against a defendant under 42 U.S.C. § 1983, a plaintiff must establish that the defendant acted under "color of [state] law" to deprive him of a right secured by the federal Constitution or laws.  See Groman v. Twp. of Manalapan, 47 F.3d 628, 633 (3d Cir. 1995).  Section 1983 does not create substantive rights; rather, it provides an avenue of recovery for the deprivation of established federal constitutional and statutory rights.  See Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996); Groman, 47 F.3d at 633.

"The color of state law . . . is a threshold issue; there is no liability under [Section] 1983 for those not acting under color of law."  Id. at 638.  The color of state law element in a section 1983 action requires that "the conduct allegedly causing the deprivation of [the plaintiff's rights] be fairly attributable to the State."  Lugar v. Edmonson Oil Co., 457 U.S. 922, 937 (1982).  For the conduct to be "fairly attributable" to

the State: (1) the deprivation must be caused by (a) the exercise of some right or privilege created by the State, or (b) by a rule of conduct imposed by it or by a person for whom the State is responsible; and (2) the defendant must be a person who may fairly be said to be a state actor, either because the person (a) is a state official, (b) acted together with or has obtained significant aid from state officials, or (c) performed conduct otherwise chargeable to the State. See id. at 936-39.

The United States Supreme Court has articulated several instances where a private party's actions may be fairly attributed to state action, explaining that such attribution accrues if: (1) a private defendant's wrongful activity results from the State's coercive power; (2) the State provides significant encouragement to a private defendant's wrongful activity; (3) a private defendant engages in a wrongful conduct while acting jointly with the State or its agents; (4) a nominally private defendant is effectively controlled by the State during the defendant's wrongful activity; (5) a private defendant has been delegated a public function by the State and used that delegation to engage in the wrongful activity; or (6) the government manages or controls a private defendant in connection with the defendant's wrongful activity.  See Brentwood Acad. v. Tenn. Secondary Sch. Ath. Ass'n, 531 U.S. 288, 296 (2001).

14

Under the above-detailed standards, and as a general matter, news media cannot be deemed a "state actor" for the purposes of Section 1983 action.  See Glendora v. Cablevision Systems Corp., 893 F. Supp. 264, 269 (S.D.N.Y. 1995) (cable television operator was not a state actor because "ownership and operation of an entertainment facility are not powers traditionally exclusively reserved to the State, nor are they functions of sovereignty" and its functions do not become government functions because it is "subject to state and federal regulation, or operates pursuant to a franchise"); Thomas v. News World Commc'ns, 681 F. Supp. 55, 66 (D.D.C.1988) (Section 1983 claim fails where complaint alleges no acts taken by newspaper "under color of" any state or D.C. law).

However, this general principle is subject to a narrow exception.  Since the Supreme Court explained that the state action doctrine requires that the constitutional deprivation "'be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible'" and that "'the party charged with the deprivation must be a person who may fairly be said to be a state actor,'" Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 937 (1982), the Supreme Court correspondingly outlined four tests, derived from the panoply of above-listed considerations, allowing to determine whether private actors, such as the media defendants, could be considered state actors: "(1) the public

15

function test, (2) the nexus test, (3) the symbiotic relationship test, and (4) the joint action test." Id. at 1202-03.

Here, Plaintiff seemingly relies on the "joint action" test by contending that the News Channel acted in concert with officials of the Cherry Hill Police Department, who were state actors.  However, when such allegations are posed, the courts "examine 'whether state officials and private parties have acted in concert in effecting a particular deprivation of constitutional rights.'"  Anderson v. Suiters, 499 F.3d 1228, (10th Cir. 2007) (quoting Lugar, 457 U.S. at 1205).  It is not enough for a plaintiff to allege in his/her complaint such concerted action by merely claiming that the media defendants and state actors must have participated or agreed, somehow, to air allegedly wrongful information.  Rather, the plaintiff has to assert facts showing that: (a) the media defendants knew about the information being wrongful; and (b) there was a shared purposes between the media and the state actors.  A plaintiff's self-serving request to the court to infer such knowledge or such shared purpose is insufficient.  See id. at 1234.

Here, Plaintiff pleads no facts indicating "joint action," within the meaning of the color of law requirement, by the News Channel and police; all he pleads is his self-serving request the Court to make such inferences, even though the Court is provided with no facts allowing such deducement.  Therefore, Plaintiff's §

16

1983 allegations against the News Channel are subject to
dismissal for failure to meet the color of law requirement, that
is, the News Channel is not a "person" acting under color of
state law.

### 3.   <u>Allegations Against the Chief and Does</u>

Supervising officials cannot be held liable for actions of
their subordinates unless the litigant asserts facts showing
these supervisors' personal involvement in the alleged wrongs.
<u>See</u> <u>Iqbal</u>, 129 S. Ct. 1937; <u>Monell v. Department of Social
Services</u>, 436 U.S. 658 (1978); <u>Rizzo v. Goode</u>, 423 U.S. 362
(1976); <u>Durmer v. O'Carroll</u>, 991 F.2d 64, 69 n.14 (3d Cir. 1993).
Thus, claims against the supervisors are subject to dismissal to
the degree they are based solely on the <u>respondeat</u> <u>superior</u>
theory.  <u>See</u> <u>Natale v. Camden County Corr. Facility</u>, 318 F.3d
575, 584 (3d Cir. 2003) (because <u>respondeat superior</u> or vicarious
liability cannot be a basis for liability under 42 U.S.C. § 1983,
a corporation – even if it is operation under contract with the
state – cannot be held liable for the acts of its employees and
agents under those theories).

Moreover, even if the litigant's claims are not based on the
doctrine of <u>respondeat</u> <u>superior</u>, the litigant still must assert
specific facts implicating defendants: personal involvement by a
defendant is an indispensable element of a valid legal claim.
<u>See</u> <u>Baker v. Monroe Township</u>, 50 F.3d 1186, 1190-91 (3d Cir.

1995); <u>Sample</u>, 885 F.2d at 1100; <u>Rode</u>, 845 F.2d at 1207; <u>accord</u>
<u>Mimms v. U.N.I.C.O.R.</u>, 2010 U.S. App. LEXIS 14321, at *4 (3d Cir.
July 13, 2010)  ("The District Court properly dismissed the
claims against [those defendants with regard to whom the
plaintiff] simply failed to state any allegation," citing <u>Iqbal</u>,
129 S. Ct. at 1949).

Here, Plaintiff's Complaint and Supplement are void of any
facts indicating personal involvement of either the Chief or
Does; Plaintiff's pleadings unambiguously indicate that
Plaintiff: (a) named the Chief as a Defendant merely on the basis
of the Chief's supervisory position; and (b) included Does as
Defendants merely on the basis of Does' employ at the Cherry Hill
Police Department.  Since such allegations are facially
insufficient, Plaintiff's claims against the Chief and Does are
subject to dismissal.

### 4.   <u>Overall Deficiency of Plaintiff's Claims</u>

Even if the Court were to ignore the above-detailed
shortcomings of Plaintiff's challenges (<u>i.e.</u>, his failure to meet
the color of law requirement, his reliance on the <u>respondeat</u>
<u>superior</u> theory and his failure to assert facts showing personal
involvement), Plaintiff's chain of constitutional claims is <u>non</u>
<u>sequitur</u>.

Plaintiff's original constitutional claim stated in the
Complaint and elaborated upon in the Supplement asserts that

18

Defendants' action must be qualified as "cruel and unusual
punishment" in violation of the Eight Amendment because
Plaintiff, allegedly, lost his Shopright employ as a result of
dissemination of the article replicated in section (I)(D)(2) of
this Opinion.  However, the Eighth Amendment protections have
nothing to do with one's loss of employ, and Plaintiff's self-
serving qualification of Defendants' actions as "cruel and
unusual punishment" cannot stitch the Eighth Amendment to
Plaintiff's claims.[5]

Plaintiff's additional "constitutional" claims (asserted in
his Supplement) make even less sense.

Plaintiff's reference to the Fourteenth Amendment maintains
that Defendants deprived him of "life, liberty [and] property"
without due process of law.  However, it is self-evident that
neither Defendants nor any other person or entity deprived
Plaintiff of "life."  Moreover, Defendants' actions had nothing
to do with Plaintiff's "liberty": indeed, Plaintiff's current
incarceration in Florida (as his past incarcerations in New

---

[5]  The protections ensuing from the Eighth Amendment guard
against undue abuses of those convicted individuals who are
placed in physical custody of state officials.  For instance, a
convicted inmate may sufficiently allege an Eighth Amendment
violation if (s)he states facts showing that (s)he was denied a
basic human need or that his/her conditions of confinement posed
a substantial risk of serious harm, or that the state officials
were deliberately indifferent to his/her health or safety.  See,
e.g., Johnson v. Wenerowicz, 2011 U.S. App. LEXIS 15736 (3d Cir.
July 29, 2011).

Jersey) was a result of Plaintiff's commission of criminal offenses in Florida (and in New Jersy), where determinations as to Plaintiff's "liberty" were made by entities other than Defendants (i.e., by Florida and New Jersey state courts), and the Complaint nowhere alleges that the state tribunals failed to provide Plaintiff with all the process due by means of Florida and New Jersey criminal proceedings.  Finally, even if Plaintiff's allegations asserting deprivation of "property" could be construed as referring to Plaintiff's loss of his Shoprite employ, Defendants did not take away that "property": *the managers of the Shoprite revoked Plaintiff's employ*, and they could do so without any violation of due process, since Shoprite is not a state actor.  Further, Plaintiff never alleges that any state actor ordered Shoprite to terminate Plaintiff's employment. Correspondingly, as it is the case with Plaintiff's Eighth Amendment challenges, Plaintiff's tossing of the phrase "Fourteenth Amendment" cannot stitch Plaintiff's allegations to the protections ensuing from the language of the Due Process Clause.

Finally, Plaintiff's claim that Defendants violated his equal protection rights "because false and misleading information was provided to the entire public and [Plaintiff's] reputation was destroyed" has nothing in common with the scope of the Equal Protection Clause, be this Clause read in the context of "class

of one" challenges or in terms of membership in a protected class. Simply put, if Plaintiff's lengthy Complaint and his even-lengthier Supplement could be read as indicating anything, they indicate a stark absence of any constitutional challenges. Therefore, all Plaintiff's allegation styled to mimic constitutional claims will be dismissed as frivolous.

### B. PLAINTIFF'S CHALLENGES READ AS A DIVERSITY CLAIM

#### 1. General Principle

The foregoing analysis leaves this Court only with Plaintiff's "slander / libel" claims.

A district court has jurisdiction "over civil actions arising under 'the Constitution, laws, or treaties of the United States' (federal question jurisdiction) and civil actions between citizens of different states with the amount in controversy exceeding the sum or value of $75,000 (diversity jurisdiction)." Rockefeller v. Comcast Corp., 2011 U.S. App. LEXIS 7942, at *1 (3d Cir. Apr. 18, 2011) (quoting 28 U.S.C. §§ 1331, 1332(a)).

Since, here, Plaintiff's challenges do not raise any federal question, Plaintiff's "slander / libel" claims may be brought only if Plaintiff establishes diversity jurisdiction.[6]

#### 2. Jurisdictional and Venue-Related Considerations

---

[6]  For the sake of the argument, the Court presumes, without making a factual finding to that effect, that Plaintiff's "amount in controversy" meets the monetary requirement of the statute.

While the venue aspects do not have dispositive effect on the outcome of this Court's analysis (because Plaintiff's claims are being dismissed rather than transferred on venue grounds), it is worth mentioning that – since the Complaint and Supplement assert, in no ambiguous terms, that Plaintiff's alleged injuries resulted from a public dissemination of information about Plaintiff, and the entity that conducted the dissemination at issue was *not* a New Jersey police department but the News Channel, a Pennsylvanian juridical entity (registered and having its principal office in Pennsylvania, and transmitting its news reports from Pennsylvania) – this action should have been brought in the federal court having seat in Pennsylvania under § 1391(b)(2), that is, had the diversity requirements were met.

To establish diversity jurisdiction, a party must show that each plaintiff is completely diverse from each defendant.  The citizenship of Plaintiff and Defendants determines whether the parties are diverse, and – if Plaintiff is a citizen of a state where any Defendant is also a citizen – then the parties are not diverse.  See Midlantic Nat'l Bank v. Hansen, 48 F.3d 693, 696 (3d Cir. 1995); see also Field v. Volkswagenwerk AG, 626 F.2d 293, 305 (3d Cir. 1980) (diversity jurisdiction "is to be tested by the status of the parties at the commencement of the suit").

Here, the clarifications provided by Plaintiff in his Supplement indicate Plaintiff's adamant position that he is

domiciled in New Jersey, as are the Chief and Does.  Therefore, Plaintiff's "slander / libel" challenges are not only improperly venued but also subject to dismissal for want of diversity jurisdiction.  Diversity is absent because Plaintiff has alleged that he and the Chief and the "Does" are all citizens of New Jersey.

### 3.   **Plaintiff's Claims Are Time-Barred**

Moreover, even if this Court were to:  (a) hypothesize that Plaintiff erroneously insisted that his domicile is in New Jersey (which, in turn, would allow the Court to presume that Plaintiff might be domiciled in Florida); and (b) ignore the impropriety of Plaintiff's venue choice, Plaintiff's "slander/libel" claims are facially subject to dismissal for failure to meet the applicable statute of limitations.

N.J. Stat. Ann. 2A:14-3 mandates a one year limitation period for defamation claims.  The statute states "[e]very action at law for libel or slander shall be commenced within 1 year next after the publication of the alleged libel or slander."  N.J. Stat. Ann. 2A:14-3.  New Jersey courts have held that the one-year statute of limitation found in N.J. Stat. Ann. 2A:14-3 applies to claims arising out the publication of false or private facts no matter how those claims are presented in the pleadings. See Swan v. Boardwalk Regency Corp., 407 N.J. Super. 108, 122 (N.J. Super. Ct. App. Div. 2009).  The state courts have held

that false light and invasion of privacy claims premised on the same conduct as a defamation claim are logically equivalent to defamation claims and are thus subject to the same one-year statute of limitation.  See id. at 122-23 ("Neither law nor logic justifies why Count Two of plaintiff's complaint labeled 'Defamation' should be subject to a one-year statute of limitations while his same claims re-labeled 'False Light/Invasion of Privacy' in Count Three should be governed by a longer limitations period").  Since Plaintiff's "defamation," "slander" and "libel" claims had arisen out of the August 5, 2009, publication of the circumstances of one of Plaintiff's prior arrests and were raised in the Complaint executed nearly two years after, i.e., on July 5, 2011, these claims are facially subject to dismissal as untimely.[7]

C.   **LEAVE TO AMEND IS NOT WARRANTED**

---

[7]  The same outcome would follow had Plaintiff filed his Complaint in a federal court having seat in the Commonwealth of Pennsylvania: under Pennsylvania law, the statute of limitations for the tort of defamation is one year from the occurrence of the allegedly tortious act.  See 42 Pa. Cons. Stat. Ann. § 5523(1).  Moreover, considerations of equitable tolling cannot apply to Plaintiff in light of his assertions that, during the last couple years, he has been either preparing to maintain or already maintaining legal actions against Florida and New Jersey police departments (and, moreover, retained counsel to represent him in these actions), that is, in addition to his alleged legal actions taken "together" with the FBI and Department of Justice in the recent past.  The foregoing indicates that Plaintiff could have filed his "libel / slander" challenged timely, that is, had he wished to do so.

24

Ordinarily, the plaintiff may be granted "leave [to amend,] . . . when justice so requires." See Foman v. Davis, 371 U.S. 178, 182 (1962); accord Lorenz v. CSX Corp., 1 F.3d 1406, 1414 (3d Cir. 1993).  Indeed, "[t]he Federal Rules reject the approach that pleading is a game of skill in which one misstep . . . may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits."  Foman, 371 U.S. at 182-83.  However, "[a]llowing leave to amend where there is a stark absence of any suggestion by the plaintiffs [may] cure the defects in the pleadings . . . would frustrate Congress's objective in enacting this statute of 'provid[ing] a filter at the earliest stage (the pleading stage) to screen out lawsuits that have no factual basis."  Cal. Pub. Emples'. Ret. Sys. v. Chubb Corp., 394 F.3d 126, 164 (3d Cir. 2004) (internal quotation marks and citation omitted); accord In re Career Educ. Corp. Sec. Litig., 2007 U.S. Dist. LEXIS 23635, at *36 (N.D. Ill. Mar. 29, 2007) (where "plaintiffs have had ample opportunities to research and plead their claims," but failed to compose a sufficient pleading, the complaint must be dismissed with prejudice).

Here, Plaintiff submitted his lengthy Complaint and even lengthier Supplement.  Having carefully combed through each and every Plaintiff's allegation stated in these pleadings, the Court located no statement indicating that Plaintiff, if granted leave

25

to amend, might be able to articulate a viable claim.  Rather, Plaintiff's allegations verify that Plaintiff's circumstances cannot be translated into a cognizable challenge, be it of constitutional nature or a state law tort challenge.

Since issuance of leave to amend to Plaintiff would be futile, no leave to amend will be granted.

## IV.  CONCLUSION

For the foregoing reasons, the Court will direct the Clerk to reopen this matter, will grant Plaintiff's application to file the Complaint without prepayment of the filing fee and will dismiss the Complaint.  Such dismissal will be with prejudice.

An appropriate Order accompanies this Opinion.


                         s/ Jerome B. Simandle
                        JEROME B. SIMANDLE,
                        Chief, U.S. District Judge


Dated:      February 1, 2012